Thank you. Our third case today is submitted on the briefs. That's Appeal 24-1961, Ramirez Acosta v. Bondi. We are therefore going to move to our fourth case of the morning, Appeal 24-1969, United States v. Payne Randle. Mr. Roy, we'll begin with you. Thank you, Judge. Good morning. May it please the Court. Attorney Michael Roy on behalf of Appellant Payne Randle. This Court should vacate the conviction and remand for a new trial with suppression of the evidence discovered at Randle's home. I want to start with what I think is the simplest argument or simplest error to point out, is that the District Court procedurally erred when it decided to credit the testimony of Officer Radecki and the other officers, because the judge felt that she was bound to accept their testimony, even though the written order I think makes clear the judge did not actually believe the story. The way she framed the question is whether she was bound to accept a story that doesn't make sense. I also think the second-to-last sentence of the introduction in the opinion and order, the Court has no basis to call these law enforcement officers liars other than its own misgivings. It concludes that it is thus so bound to accept their testimony. I think that's a legal error. The Court's misgivings is absolutely a reason to discredit the testimony. Isn't that argument taking it a bit out of context and just focusing on bound to accept? When you look at it in its entirety, the Court questioned whether or not you could smell marijuana outside from that far away, but she said, I held a hearing. Every one of them came in here and testified. They testified credibly and consistently. So just looking at it in its entirety, why aren't you just taking that phrase a bit out of context or asking us to look at that in isolation? Well, I absolutely agree we can't read a written opinion like it's a statute or something and parse the language individually, but I think the more you read the entirety of the opinion, the more it supports our position. It's not just this introduction. It's throughout the entire opinion. It's later on, the Court says, remains deeply skeptical. As the government concedes, the Court went into the hearing because it didn't really believe the story, and then it says, well, I'm not particularly moved by what they said. It doesn't change any of the facts, so like nothing at the hearing had moved the needle one way or the other. But didn't she specifically credit Radecki's Olfactory Excellence? Exactly. That's on page seven. She credited that, correct? And I was actually about to quote that next because I almost read that as sarcasm. I mean I think that goes towards it's almost like jocular saying how absurd is it, but I guess I have to accept it. It almost seems more like it's a policy determination, that it would be too politically of a third rail to say that six police officers lied at the hearing. And I think there's two impermissible reasons why the Court was afraid to go that way. First, the head counting, six witnesses means should credit, and that they have special status as police officers. And I think neither of those are permissible as special considerations to adopt a testimony just because they come off with a credible demeanor if the Court doesn't otherwise believe it. It's true you can't just count the number of witnesses, and we say that in jury instructions, but why isn't that more of a statement that just reinforcing the consistency and the consistency and credibility support that it happened? I think because in this case the Court kept saying it doesn't make sense. I remain deeply skeptical. Nothing that these officers said changed the facts that we had coming into the hearing. Mr. Roy, let me get the benefit of your thoughts on some reasoning. Arguments in the brief go to number and profession of the witnesses. In the reply brief, especially page 7, there's the argument that you've offered here, that when you look at all of the comments in context, it's an incorrect legal standard being applied. And if there's an incorrect legal standard being applied, that should result in a reversal. However, there's also an argument that that would be waived because it would be in the reply brief. If it's waived and it's in the reply brief, we then engage in some kind of plain error analysis. If the district judge applied the wrong standard or she muddied up the standard such that we're not able to ultimately rely on that, we find there's an error. It would be an error of consequence because some evidence would have been admitted that should have been excluded. But I think the third element of the plain error analysis would be, is there a reasonable probability that but for the error, the outcome of the suppression motion would have been different? Isn't it difficult to make that argument on the third element of plain error that the outcome of the suppression motion would have been different, giving her credibility findings? So I have two parts or two answers to that, Judge. So the first would be, I mean, I'm coming in as sort of a pinch hitter for this argument. So I also read the briefs with fresh eyes, just like you did. I thought the argument was apparent in the opening brief. Maybe I'll have to reread it again. I thought it was from the get-go. The court legally erred, thought it had to accept their opinion. Now, in the opening brief, it was, yes, it said she thought she was bound because of volume and because of their status as police officers. I mean, I think my understanding is that's the same as what we're arguing in the reply brief. It's that, yes, like she legally erred and that she thought she was bound. The reasons why she thought she was bound was the number of witnesses and their status. So you aren't challenging her application of the correct Franks standard. Is that fair? Oh, that it has to be a preponderance of the evidence to show reckless? Yes. Oh, yes, I see. No, I think the reply there is a clarification that reckless disregard as well as perjury can be a Franks violation. That's more in response to the government's brief where it frames it as has to be a finding of perjury. So you agree that the district court judge applied the correct Franks standard here. You just disagree on how she assessed the evidence essentially? Well, we disagree on the standards she used and the methodology she used to assess the evidence. Okay. But there's no disagreement. But not the Franks standard? No, no. I think clearly the judge understood that if she discredited the officers or found that there was misrepresentation in the affidavit, that it would have resulted in suppression. And that's also, I mean, the government agrees with us that if the judge had found that the testimony was not true, it would have resulted in suppression because there wouldn't have been probable cause, even though this was only one part. But we seem to be in agreement that overall probable cause required that smell of marijuana. I do want to just make another point regarding the sort of special status of the police officers. I think that the hypothetical I would like to propose that I think sort of points out the error the court made is, say it had been six co-defendants in a drug conspiracy who all testified the same way. And, I mean, you come in thinking, well, this sounds ludicrous. But they all have really good demeanor on the stand. I think that the same analysis would apply here with police officers. There's no special status to police officers. Obviously, we cite studies. We cite that poster of dissent about studies about police officers lying on the stand. Our argument is not that those studies are evidence that these specific officers lied. It's just that everyone's on the same playing field. You need to assess their credibility just like you would assess the defendant's credibility. Quick question. If we agree with you, why wouldn't count one stand involving the drugs that were intercepted in the initial package that had nothing to do with the smelling outside the house? Sure, Judge. So I'd be happy to discuss the sort of harmless error issues on any of the counts. For count one in particular, the package, the package, again, didn't have his name on it. It was two pseudonyms on it. And Radecki actually, he testified at the hearing, the suppression hearing, that he looked up in the databases the people at the address. Mr. Randall was not associated with the address. The only thing that actually then tied him to the package was the mail that they found inside of the house. They used mail identifying documents from the house. That's what they submitted as evidence of his residence to show that he was the intended recipient of the package. Now, likewise for the drugs in the car, Radecki also testified at the hearing that the surveilling officers, the surveillance team, they weren't necessarily able to recognize Radecki as he was putting things in the trunk. So, again, it's the evidence from the house identifying documents showing that he had all this other drug dealing paraphernalia that then tied him to the person putting the drugs in the car. And then lastly, with the 922G1 count, the government already concedes that the 924C count would have to fall because they said the guns in the house were the ones tied to the drug crimes. There was a gun in the car, yes, but there were five guns in the house. And there's no special verdict form saying which gun the jury thought about when it found him guilty of 922G1. It seems very likely that the jury focused on one of the five guns in the house that the government was already telling the jury to focus on because those were the guns tied to the 924C charge. And I want to be clear. We're not saying it would be impossible for the government to obtain a conviction on some of these counts without the evidence from the house, but just on harmless error review and with the nature of the jury verdict form, we can't say that it necessarily would have been the same verdict. And I see I'm out of time. Thank you. We'll give you some rebuttal time, Mr. Roy. Mr. Whalen, we'll turn to you for argument on behalf of the government. May it please the court. Thank you, Your Honors. Nathaniel Whalen here on behalf of the United States of America. There's a line between being skeptical of an officer's story and being prepared to call the officer a liar. The district court was clearly on the skeptical line throughout these proceedings, but defendant didn't present sufficient evidence to convince the court to cross the line and find the officer a liar. That is the correct legal standard, and so we ask that you affirm the court's denial. I think Judges Saini and Maldonado kind of got to the main point at issue in this case right away, which is you have to read this order in total. Yes, the district court's rhetorical question at the beginning of the opinion suggests that she was skeptical, and she had misgivings, and she had reservations about, based on her own experience, can you smell marijuana under the circumstances where the officer said. But then she did what a judge is supposed to do and what a trier of fact is supposed to do, and she called the witnesses. And she heard from all six of them. They all testified consistently and credibly that they smelled the marijuana from up to 25 feet away. And the court chose to credit their testimony consistently and credibly that they were telling the truth. That is the reason to deny the Franks hearing in this case. How should we read her statement that in order to find the officer had lied in the search warrant affidavit, quote, the court would have to conclude that all six committed perjury, and she just wasn't willing to do that? Why isn't that really a tallying, as Mr. Roy has argued? Well, I think as a factual matter, that is true, that the court would have to find all six committed perjury because all six said we smelled the marijuana inside the house. And so if you're going to find that Detective Radacki lied, you, by extension, have to find that all six were lying about smelling marijuana in the house. Additionally, there's the fact in the search warrant affidavit that it's not just Detective Radacki who smelled the marijuana. It's the officers in the back of the house, including Lieutenant Smallwood, who testifies at the hearing. So if it's a matter of physical impossibility to have smelled marijuana at that house on that day in that instance, all six officers got up and testified to a story the court found was a lie, or the court would have had to find was a lie. So it's not a question of tallying. As Your Honor said, it's corroboration. A court's more inclined to believe a version of events when multiple officers testified to it or multiple witnesses. And I'd like to actually go with Mr. Randall's hypothetical for a second about a six co-defendants testified. A court could certainly credit that testimony. Six co-defendants testified, we smell marijuana outside the house. If the co-defendants said, we're familiar with the smell of marijuana, we've dealt with it a lot, we know it when we smell it, for lack of a better phrase. Because that's why you credit the testimony. It's not that they're law enforcement officers. It's not that they have the badge. It's what the court said. It's because they're all experienced in it. They're trained in the smell. That's kind of within the officer's wheelhouse. They have certainly a much better recognition of marijuana than I do, than I suspect, and maybe I'm speaking out of turn, Mr. Roy does, than I suspect Chief Judge Brady does. They're dealing with it every day for years on end on a daily basis. They're the experts. And that's why when an officer comes in and signs a search warrant saying I smelled marijuana, that can support probable cause. But as we noted, there's a Ninth Circuit case where a lay witness testifies I smelled marijuana. And the court struck it because there's no evidence the lay witness was familiar with the smell of marijuana. It's that kind of initial foundation inquiry that makes them more reliable about this particular thing. Now, if we had six officers testify the light was red when it was actually green, that's not really within an officer's experience in wheelhouse. And so maybe their testimony as law enforcement officers is not entitled to special credit as to that particular factual scenario. Counsel, I have a question about the smell. In reading the transcript, there was some inconsistency as to whether it was raw or burned marijuana. The affidavit talks about raw marijuana. I unfortunately don't have experience of knowing what the difference in the smell is. But what do you make of those inconsistencies in the officer's testimony? So I think they all testified the smell that they – from this hearing, they all testified the smell that they smelled at that house on that day was raw marijuana. I don't believe they testified that it was smoked. I think there might have been instances where they referenced their experience with smoked marijuana. But on that particular day, I believe the testimony across the board is that it was raw marijuana. And so I don't think there is an inconsistency. I do think that – well, I think as a matter of kind of law enforcement experience, the smells of raw marijuana and smoked marijuana are different. I think most officers would testify to that. And so that changes the calculus a little bit. I don't know which way that favors. I'm also not very familiar with the smell of raw marijuana other than kind of walking down the street. And so I think the law enforcement officers testified on this day it was raw marijuana that they smelled. Does that answer your honest question? Pretty much.  Getting to Judge Brennan's question, I read the briefs differently than Mr. Roy. I read the briefs – the opening brief is saying that Chief Judge Brady committed illegal error by counting and believing their law enforcement officers. I think the reply brief raises a very different point of she misunderstood the correct standard. And if you disbelieve a law enforcement officer, you can't accept their story. I think that's a little bit hard to reconcile with I think what Mr. Roy said at the end, which is clearly the judge understood. If she discredits an officer or finds they misrepresented the standard, she had to grant the Franks hearing. So I think it's a little bit hard to say Chief Judge Brady understood the law and she didn't understand the law at the same time. Maybe the argument is she misapplied the law in this case. And then I think that gets back to the question of you have to read the order as a whole. And so pages 1, 2, 3, 4, 5, 6, 7, 8, 9 are all part of this opinion. And on page 6, she says definitively, six law enforcement officers got on the stand and testified they smelled marijuana. The court finds that they testified consistently and credibly, and all six have extensive law enforcement experience. So she understood that she is finding credibly that they testified credibly they smelled marijuana. She believes their story. She has misgivings based on her own personal experience, which I think is fine. I think, as this court noted in Contreras and Collin, it's okay to be a little skeptical. But that's not the same as finding an officer lied. So Mr. Willard, if you could play that out to plain error.  Yeah. Well, I don't think there's an error at the front end because I don't think the court applied the wrong legal standard. I think if you look at page 6 of the court's opinion, it finds that they are not lying. I certainly don't think it's plain on this record. And so I think the defense can't meet the first or second element of the plain error standard of review. I think the inquiry can end right there. Let me quickly address, Your Honors, if I may, the question of recklessness. Chief Judge Wadey knew that reckless conduct could give rise to frank suppression. I think that's a square peg in a round hole in this case. The standard for recklessness is whether the affiant entertained serious doubts as to the truth of their allegations. I don't know how you can write in an affidavit, I smelled marijuana, and entertain doubts about that particular statement when you write it. It's either true or it isn't. That's the binary world that that particular statement lends itself to. Now, recklessness, this court's applied recently, forgive me, I don't remember the case, where there's other information contradicting the officer's statement in the affidavit. And this court's found that he was reckless in not including that. That's where recklessness comes in. This is about lying. And he either lied or he didn't. So I don't think recklessness is really a way that this court could reverse. Unless this court has any questions on that or the first two issues, I'd quickly like to address the harmless error review. As to count one, as to all the counts, the felon in possession count, the possession with intent to distribute, and the attempted possession with intent to distribute, we think the evidence is overwhelming. Any jury would have voted to convict for the reasons in our brief. It's not just the letters in the house that tied Mr. Randall. It's the fact that he is also taking this massive amount of marijuana and methamphetamine out of his house prior to the execution of the search warrant and putting it in the car. It's the fact that the individual whose car he put it in testified that he's a drug dealer. It's in his jail calls where he says, yes, I had marijuana in the house. He concedes his guilt as to the other counts. That is what makes the evidence overwhelming in this case. It's not the fact that they found guns and other drugs in the house as it relates to count one. As it relates to the gun charge, we agree there was no special interrogatory, but that's not the question on harmlessness. The question is, absent the evidence, would any reasonable jury have voted to convict? And we think the answer is yes, based on the guns in the car that the officers did see him take out of his house and put in the trunk. Same thing with the drugs in the car. And we know the jury found that he actually possessed with intent to distribute the drugs in the car because we said the only way you get to the special interrogatory 50-gram threshold is you got to aggregate the guns in the car and the guns in the house. And they reached that threshold. So they clearly found that he possessed with intent to distribute the drugs in the car. And there would need to be resentencing on that because if you exclude the drugs in the house, we do get below that 50-gram threshold. One final point, Your Honors, and then I'll sit down and let's go to the questions. I want to make sure we're not misconstrued as conceding the 924C count would have to go away if this court were to reverse. He should be retried on the 924C count because he could be convicted based on the guns in the car. The evidence, I just can't get up here with a straight face and tell this court the evidence is overwhelming as to the 924C based on the gun in the car. But that is a basis for conviction. I don't want it to be construed as us waiving that there is sufficient evidence for this case to be remanded on that particular count. Unless this court has any questions, we would ask that you affirm. Thank you, Mr. Whalen. Thank you. Mr. Roy, we'll give you two minutes for rebuttal. Thank you, Judge. I want to start briefly with talking about the sort of training and experience arguments about that the court was more focused on their special ability to recognize marijuana than the fact that they were police officers. The Ninth Circuit case that the government was referring to, De Leon, that involved a dispute about whether they could specifically smell like a grow operation as opposed to cured or prepared marijuana. So it's different facts. We are not contesting their ability to recognize the smell of marijuana. I don't really see how the training and experience comes in. I have no doubt that Officer Radecki knows what marijuana smells like. The issue is whether, as a factual matter, the odor was there at the time. There's no training and experience that turns him into a bloodhound, right? On top of that, if you actually look at the suppression hearing, Radecki described the training he received and it was basically they showed us pictures of marijuana and I learned the smell on the job. It's not like he has a super nose. Regarding the sort of plain error issue you were referring to, Judge Bredin, I just want to emphasize I think there's multiple legal issues at play in this Franks hearing just as there is in almost any hearing. I'm sure Judge Brady understood the Franks standard. The issue was that she misapplied the standards on how to assess the credibility of the officers. I think that that was made clear in the opening brief as well. I'll point to the heading on page 9 of the opening brief that asks whether by deciding the court was bound to accept testimony that doesn't make sense, the district court erred. That is the argument. Lastly, I want to touch once more on the harmless error issue. One thing I didn't get to in my opening talk is part of the harmless error comes from the propensity effect as well. Once the government has proved beyond reasonable doubt that he had not just drugs in his house but multiple guns as everyone knows is often argued to be associated with drug dealers, scale, vacuum sealer, grinder, all sorts of paraphernalia. The drug was primed. They already knew he was a drug dealer. It was much easier for them to find the other counts too. Thank you. Thank you, Mr. Roy. Thank you, Mr. Whalen. The case will be taken under advisement.